Steven R Sumsion (#8317)
**SUMSION BUSINESS LAW**
1800 Novell Place, 5th Floor
Provo, UT 84606
Tel: (801) 375-2830
Email: steve@businesslawutah.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **ENEVIVE**, **LLC**, a Utah Limited Liability company,<br><br>        Plaintiff,<br><br>v.<br><br>**BLUELOGIC**, **LLC**, a Utah Limited Liability Company, **CHRISTOPHER (TOPHER) SCHEELER,** an individual, **ROBERT HEINRICH ADAMS**, an individual, **CHRISTOPHER WATSON**, an individual, **JARED BAYLESS**, an individual, and **DOES 1-10.**<br><br>        Defendants. | **VERIFIED COMPLAINT**<br><br>Civil No.: 2:25-cv-00796<br><br>Judge:_____<br><br><br><br>**JURY DEMANDED** |

Plaintiff Enevive, LLC ("Enevive" or "Plaintiff"), by and through counsel, hereby

complains against Defendant BlueLogic, LLC ("BlueLogic"), Christopher (Topher) Scheeler

("Mr. Scheeler"), Rob Adams ("Mr. Adams"), Christopher Watson ("Mr. Watson"), Jared

Bayless ("Mr. Bayless"), and John Does 1-10 (collectively "Defendants") as follows:

## **NATURE OF THE ACTION**

Enevive brings this complaint to enjoin and recover damages resulting from former

employees misappropriating proprietary information and trade secrets to "create Enevive 2.0." in

1

unfair competition and in breach of their employment and/or confidentiality agreements with Enevive. Enevive is a water purification and consulting service business, that tests water, sells, installs, and maintains custom water purification systems for residential and light commercial use. Messrs. Scheeler, Adams, Watson, and Bayless were previous employees of Enevive. Each was subject to non-disclosure agreements and an implied understanding that they would act in Enevive's best interests. But these five individuals have conspired to form BlueLogic, a company designed to be in direct competition with Enevive. By breaching their contracts with Enevive and exploiting Enevive's proprietary information and systems, the Defendants have admittedly created a directly competitive business, "Enevive 2.0." Accordingly, Enevive requests injunctive relief to prevent imminent and irreparable harm to its business, and pleads for damages caused by Defendant's misappropriation, conversion, unfair competition, breach of confidential agreements, and otherwise unlawful conduct.

## PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Enevive, LLC, is a Utah Limited Liability Company with its principal place of business in Pleasant Grove, Utah.

2.  Defendant BlueLogic, LLC, is a Utah Limited Liability Company with its principal place of business in Saratoga Springs, Utah.

3.  Defendant Christopher (Topher) Scheeler is a resident of the State of Utah, with a home address of 10871 N Town Center Park W. Highland, Utah 84003.

4.  Defendant Robert Heinrich Adams is a resident of the State of Utah, with a home address of 12116 S. Spring Wheat Circle, Riverton, Utah.

5.      Defendant Christopher Watson is a resident of the State of Utah, with a home address of 782 Pratt Lane 303, Saratoga Springs, Utah 84045.

6.      Defendant Jared Bayless is a resident of the State of Utah, with a home address of 1779 W. Ridgeline Road Unit 120, Stockton, Utah 84071.

7.      John Does 1-10 are unknown entities or individuals who may be party to this Complaint.

8.      This Court has subject matter jurisdiction over civil actions brought under 18 U.S.C. § 1836(b) and 15 U.S.C. § 1125(a) pursuant to 28 U.S.C. § 1331.

9.      Plaintiff's state law claims share a common nucleus of operative fact such that they constitute the same case or controversy with Plaintiff's claims under 18 U.S.C. § 1836(b) and 15 U.S.C. § 1125(a). As such, this Court can exercise Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claims.

10.     Venue is proper in this District pursuant to 28 U.S. Code § 1391(b)(2), as the events of the complaint arose in Utah County and surrounding areas.

### FACTUAL BACKGROUND

11.     Registered in Utah since 2017, Enevive is a water purification and consulting service business that tests, installs, and maintains custom water purification systems for residential and light commercial use.

12.     Enevive has developed and owned confidential and proprietary business information, including without limitation: water filtration research, engineering designs and installation techniques for custom residential filtration systems, a company customer relationship

management system (the "CRM System"), leads and lead generation software, client lists, and other proprietary information (collectively, the "Trade Secrets").

13.     As part of its marketing strategy and online presence, Enevive maintains a website to demonstrate in general its product and business purposes. Screenshots of the homepage of Enevive's website (enevive.com) are included below.





4



14.     Enevive has consistently grown in revenue and profit since its inception, generating over $3M in revenue in 2024.

15.     On March 11, 2024, Mr. Adams was hired at Enevive to provide services related to improving business operations.

16.     On March 18, 2024, Mr. Adams signed a non-compete/non-disclosure agreement with Enevive. *See* Ex. A.

17.     In June of 2024, Mr. Scheeler and Mr. Watson were hired by Enevive to help make the business more efficient. Each was given access to Enevive's entire front end and back end operation, including: CRM System, client lists, lead generation software, engineering designs, and other Trade Secrets.

18.     When Mr. Scheeler was hired, he assured Enevive that by hiring him and Mr. Watson, they would generate revenue for the company that would far outweigh the compensation agreed upon.

19. Mr. Watson maintained full control over Enevive's CRM System and created Enevive's "Go High Level System" managing Enevive's workflows.

20. Mr. Scheeler, began to exhibit inappropriate behavior while at Enevive, including gradually beginning to exclude the Members of Enevive from major business and operational decision making.

21. Mr. Scheeler admitted on multiple occasions that he was going to "create Enevive 2.0."

22. While still employed by Enevive, Mr. Scheeler tried to recruit Enevive employees to join "Enevive 2.0" after getting it up and running.

23. On September 24, 2024, Mr. Adams employment with Enevive ended.

24. Later, on December 30, 2024, Mr. Bayless signed an employment contract with Enevive, in which his duties included "Spearhead[ing] . . . Enevive's entire client services department . . ." effectively making him head of home installs and managing Enevive's warehouse. *See* Ex. B.

25. Mr. Bayless' employment contract included covenant not to compete and a clause regarding confidentiality. *See id.*

26. On December 30, 2024, Mr. Bayless signed a separate non-disclosure agreement. *See id.*

27. On March 3, 2025, Mr. Scheeler signed an employment agreement which included that he agreed to abide by the policies listed in the Firm Employee Handbook, which included policies surrounding confidentiality. *See* Ex. C.

28.    On April 29, 2025, while Messrs. Scheeler and Watson were still employed at Enevive, BlueLogic was formed with Mr. Watson as its registered agent. A screenshot of the listing on the Utah Secretary of State's website is included below.

| | | | |
|---|---|---|---|
| Entity Name: | BLUELOGIC LLC | | |
| Entity Number: | 14568389-0160 | | |
| Entity Type: | Domestic Limited Liability Company | | |
| Entity Subtype: | Limited Liability Company | Formation Date: | 04/29/2025 |
| Profession: | N/A | Formation Effective Date: | 04/28/2025 |
| Entity Status: | Active | Renew By Date: | 04/30/2026 |
| Entity Status Details: | Current | Last Renewed Date: | N/A |
| Status Updated On: | 05/02/2025 | | |

ENT INFORMATION

| | |
|---|---|
| Name: | Christopher Watson |
| Registered Agent Type: | Individual |

29.    BlueLogic is a residential water purification business that sells "Whole Home Purification System[s]."

30.    Due to his increasingly unprofessional behavior, on May 29, 2025, Mr. Scheeler was involuntarily terminated after Trent Spafford, a Member Manager of Enevive, and other Enevive employees confronted him on several issues.

31.    On the same day of Mr. Scheeler's termination, Mr. Watson voluntarily ended his employment with Enevive.

32.    Immediately after Messrs. Scheeler and Watson's departure, Enevive experienced a sudden halt in lead generation that, upon information and belief, was a direct result of technical manipulation by Mr. Watson.

33.    Despite close ties with Mr. Scheeler and Mr. Watson, Mr. Bayless was retained at Enevive until he resigned without notice on July 7, 2025.

34.     Mr. Bayless has been working with BlueLogic since his resignation on July 7, 2025.

35.     On August 4, 2025, Mr. Bayless emailed Kirk Todd, an Enevive product partner, with a copy of the BlueLogic installation diagram asking for feedback. A screenshot of this email is included below for reference.

36.     August 8, 2025, Melanie Shumway, Sales Director at Enevive, was approached by Mr. Adams at a networking event where he divulged to her that BlueLogic was fully

operational, working out of a warehouse he helped to provide, and using Enevive employees to make sales for BlueLogic.

37.    BlueLogic's website (bluelogicwater.com) borrows heavily from Enevive's website's aesthetic, including content, pictures, layout, and color scheme. Screenshots of the bluelogicwater.com homepage are included below.







38.      Upon information and belief, BlueLogic uses Enevive's Trade Secrets and business model to serve the same customer base—*i.e.*, residential consumers in Utah and across the United States.

39.      Defendants' ongoing misappropriation, unfair competition, and otherwise unlawful conduct has resulted in damages, including lost revenue and profits, for Enevive in an amount totaling over $1,000,000.00.

40.      Defendant's unlawful conduct has created imminent and irreparable harm to Enevive through direct targeting of Enevive's business and brand partners which has the effect of diverting sales away from Enevive.

## FIRST CAUSE OF ACTION
(Unfair Competition)

41.      Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

42.     Enevive has developed a unique brand that includes custom residential water purification systems, customer education, installation techniques, and a website to indicate their presence online.

43.     Defendants, utilizing Enevive property, have created a brand that mimics, without limitation, Enevive's water purification systems, customer education, installation techniques, website, etc.

44.     Defendants have admitted their intent to create "Enevive 2.0" to other Enevive employees while Defendants were still employed by Enevive.

45.     Defendants have used proprietary information obtained through employment at Enevive to create a business that is based on that proprietary information and unfairly competes with Enevive.

46.     Defendants recruited other Enevive employees and used Enevive employees to sell BlueLogic products.

47.     Defendants have sold products to customers based on Enevive Trade Secrets, presenting Enevive's products as their own.

48.     Defendants' actions and intent are enough to establish a probability of confusion or deception among Plaintiff's target market, such that they would be misled.

49.     As a result of Defendants' conduct, Plaintiff has experienced actual losses including lost profits and reputational damage.

50.     Plaintiff requests the Court grant Plaintiff injunctive relief, prohibiting Defendants from further conduct constituting unfair competition or "palming off", and damages in an amount to be determined at trial plus all applicable interest and attorney fees.

## SECOND CAUSE OF ACTION
(In the Alternative, Statutory Unfair Competition – Utah Code § 13-5a-103)

51.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.     Defendants' conduct in building its business on Enevive's Trade Secrets and using Enevive's employees to sell BlueLogic products is unlawful, unfair, and fraudulent.

53.     Defendants exploited Enevive by assuring them that they would generate increased revenue for Enevive if they were hired, only to familiarize themselves with and steal Enevive's business structure and Trade Secrets.

54.     Upon information and belief, Defendants' conduct has led to a material diminution in the value of Enevive's intellectual property, demonstrated by a marked decrease in revenues.

55.     Defendants' conduct infringes on Enevive's patents and trademark by misappropriating both.

56.     Defendants' recruiting of Enevive employees and use of Enevive employees to sell BlueLogic products is a targeted scheme and is predatory in nature.

57.     Defendants' conduct has resulted in actual damages to the Plaintiff, including lost profits and reputational damages.

58.     The Plaintiff is entitled to damages in an amount to be determined at trial including costs and attorney fees.

59.     The Plaintiff, due to the severity of Defendants' conduct, is also entitled to an award of appropriate punitive damages as well, in accordance with Utah Code § 13-5a-103(1)(b)(iii).

**THIRD CAUSE OF ACTION**
(Misappropriation of Trade Secrets – 18 U.S.C. § 1836(b))

60. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

61. Since at least 2017, Enevive has developed and owned confidential and proprietary business information, including without limitation water filtration research, designs and installation techniques for custom residential filtration systems, a company customer relationship management system (the "CRM System"), leads and lead generation, and other proprietary business information (collectively, the "Trade Secrets").

62. The Trade Secrets are not known outside of Enevive, are not readily ascertainable, and each confers a competitive advantage worth millions of dollars in revenue.

63. The Trade Secrets derive independent economic value from not being generally known or readily ascertainable by proper means and are subject to reasonable measures of secrecy.

64. Enevive uses the Trade Secrets to sell residential home water purification systems in interstate commerce.

65. Defendants obtained knowledge of Enevive's Trade Secrets through false assurances that hiring them to work for Enevive would result in increased revenue for Enevive.

66. Beginning in or around April 2025, and continuing thereafter, Defendants, acting in concert with certain Enevive employees, improperly disclosed and used the Trade Secrets in interstate commerce without Enevive's consent.

67. Defendants intentionally recruited employees from Enevive to build their own business and used Enevive employees to sell BlueLogic products.

68.    Defendants' conduct is in direct violation of non-disclosure agreements and employment contracts entered by Defendants with Enevive.

69.    Defendants' conduct in copying and using Enevive's Trade Secrets and recruiting Enevive employees is evidence of a willful and malicious scheme to improperly reap the benefits of Enevive's proprietary information.

70.    Defendants' conduct has caused lost profits, revenues, reputational damage, and diminution in the value of the Trade Secrets, and ongoing unjust enrichment.

71.    Pursuant to 18 U.S.C. § 1836(3)(A), Plaintiff is entitled to lawful injunctive relief to prevent further misappropriation of the Trade Secrets and affirmative action to protect the Trade Secrets.

72.    Pursuant to 18 U.S.C. § 1836(b)(3), Plaintiff is entitled to damages adequate to compensate for actual loss or unjust enrichment (or, in the alternative, a reasonable royalty) in an amount over $1,000,000.00, plus all applicable interest, and reasonable attorney fees.

73.    Pursuant to 18 U.S.C. § 1836(b)(3)(C), inasmuch as Defendants' conduct is willful and malicious, Plaintiff asks this court to grant an award of exemplary damages in an amount no greater than double the amount awarded to Plaintiff in actual damages.

**FOURTH CAUSE OF ACTION**
(In the alternative, Misappropriation of Trade Secrets – Utah Code § 13-24-1 et seq.)

74.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

75.    Defendants, through their efforts to copy Enevive's Trade Secrets, sell products based on Enevive's Trade Secrets, and use Enevive employees to sell BlueLogic products have used the Trade Secrets improperly.

14

76.     At the time of Defendants' improper use of the Trade Secrets, based on the non-disclosure agreements and employment contracts entered into by most Defendants with Enevive, Defendants were under circumstances giving rise to a duty to maintain their secrecy or limit their use.

77.     As a result of Defendants' improper use of the Trade Secrets, Plaintiff has suffered lost profits, revenues, reputational harm, and diminution in value of its Trade Secrets.

78.     Pursuant to Utah Code § 12-24-3, Plaintiff is entitled to injunctive relief to prohibit further misappropriation of Plaintiff's trade secrets and affirmative acts to protect a trade secret.

79.     Pursuant to Utah Code §§ 12-24-4(1), Plaintiff is entitled to damages adequate to compensate for actual loss or unjust enrichment (or, in the alternative, a reasonable royalty) in an amount over $1,000,000.00, plus applicable interest.

80.     Pursuant to Utah Code § 12-24-4(2), inasmuch as Defendants' conduct is willful and malicious, Plaintiff is entitled to an award of exemplary damages in an amount no greater than double the amount awarded to Plaintiff in actual damages.

81.     Pursuant to Utah Code § 12-24-5, inasmuch as Defendants' conduct is willful and malicious, Plaintiff is entitled to an award of reasonable attorney fees.

## FIFTH CAUSE OF ACTION
(Breach of Contract)

82.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     Messrs. Scheeler, Adams, and Bayless each signed employment contracts with Enevive as well as non-disclosure agreements.

15

84.    Messrs. Scheeler, Adams, and Bayless agreed to certain terms as governed by their respective employment contracts and non-disclosure agreements.

85.    Under their employment contracts and non-disclosure agreements, Messrs. Scheeler, Adams, and Bayless had the obligation to execute their role at Enevive and Enevive had the obligation to provide compensation.

86.    Messrs. Scheeler, Adams, and Bayless further had the obligation to not disclose proprietary information to third parties, misuse proprietary information, or, in the event of termination, compete in the same business as Enevive for a period of twenty-four (24) months.

87.    Throughout their employment at Enevive, Plaintiff provided compensation to Messrs. Scheeler, Adams, and Bayless, as was agreed upon in their employment contracts.

88.    Messrs. Scheeler, Adams, and Bayless formed BlueLogic prior to their termination at Enevive, using Enevive's proprietary information to create their business, in violation of their non-disclosure agreements and employment contracts.

89.    Furthermore, Messrs. Scheeler, Adams, and Bayless formed BlueLogic to directly compete with Enevive in violation of their covenant not to compete.

90.    Messrs. Scheeler, Adams, and Bayless' failure to adhere to these provisions constitutes a breach of contract.

91.    Defendants breach of contract has directly harmed Plaintiff as the newly formed BlueLogic is directly competing with Enevive for business.

92.    As a result of Messrs. Scheeler, Adams, and Bayless' breach of contract, Plaintiff has been damaged in an amount to be determined at trial plus all applicable interest and attorney fees.

16

**SIXTH CAUSE OF ACTION**
(In the Alternative – Breach of Implied Covenant of Good Faith and Fair Dealing)

93.     Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.     As a matter of law, an implied covenant of good faith and fair dealing is inherent in the employment agreements, non-disclosure agreements, and employment relationships entered between Enevive and Messrs. Scheeler, Adams, Watson, and Bayless.

95.     Pursuant to the covenant of good faith and fair dealing, the Parties have an obligation to not act in a way that prevents the other party from receiving the benefits contemplated in the employment agreements, non-disclosure agreements, and employment relationships.

96.     Enevive performed its obligation to not act in a way that prevents Messrs. Scheeler, Adams, Watson, and Bayless from receiving the benefits contemplated in the employment agreements, non-disclosure agreements, and relationships by providing compensation.

97.     Messrs. Scheeler, Adams, Watson, and Bayless failed to perform their obligations to not act in a way that prevents Enevive from receiving the benefits contemplated in the employment and non-disclosure agreements.

98.     Messrs. Scheeler, Adams, Watson, and Bayless' conduct in forming BlueLogic constitutes a willful failure to cooperate in fulfilling the employment agreements, non-disclosure agreements, and employment relationships.

99.     Messrs. Scheeler, Adams, Watson, and Bayless' conduct in recruiting Enevive employees and using Trade Secrets to sell BlueLogic products constitutes a willful failure to

17

cooperate in fulfilling the employment agreements, non-disclosure agreements, and employment relationships.

100.    Messrs. Scheeler, Adams, Watson, and Bayless' failure to cooperate in performing their obligations under the employment agreements, non-disclosure agreements, and employment relationships prevented Enevive from receiving the benefit of the effective management of Enevive's operations.

101.    As a direct and proximate result of Messrs. Scheeler, Adams, Watson, and Bayless' breach of the implied covenant of good faith and fair dealing, Enevive has incurred damages in the amount to be determined at trial plus all applicable interest and attorney fees.

## SEVENTH CAUSE OF ACTION
(In the Alternative – Unjust Enrichment)

102.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

103.    Defendants received the benefit of establishing their own business based on Enevive's Trade Secrets and the sales services of Enevive employees.

104.    Defendants knew that they were unjustly retaining benefit through establishing BlueLogic based on the Trade Secrets of Enevive as the employment and non-compete agreements signed by Defendants outlined these Trade Secrets as proprietary information.

105.    It would be unjust for Defendants to retain the foregoing benefits obtained from Enevive without conferring the benefit of full payment for such on Enevive.

106.    Defendants are enjoying and retaining the foregoing benefits without conferring the benefit of full payment on Enevive.

18

107.    To permit Defendants to continue in retaining the foregoing benefits would result in an unjust enrichment of Defendants at Enevive's expense.

108.    The cost to Enevive of procuring the foregoing benefits currently enjoyed by Defendants is an amount to be determined at trial but over $1,000,000.00 plus all applicable interest.

**EIGHTH CAUSE OF ACTION**
(Trademark Dress Infringement – Lanham Act 15 U.S.C. § 1125(a))

109.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

110.    Since at least 2017, Plaintiff has fostered a unique brand including a distinct website.

111.    Plaintiff's website, enevive.com, includes distinct images, color scheme, content, and layout.

112.    As Plaintiff's main business is the installation of custom home water purification systems, their website is non-functional.

113.    The Enevive logo is clearly displayed on Enevive's website, suggesting Enevive is the source of the website.

114.    Defendants have used Enevive's branding, including website aesthetic, in the same market and geographical area since April 2025.

115.    Defendants' website, bluelogicwater.com, borrows heavily from enevive.com's images, color scheme, content, and layout.

116.    Defendants' use of Enevive's brand misrepresents the nature and characteristics of the goods and services they allege to provide.

19

117. Defendants use Enevive's trade dress as it relates to its website aesthetic, such that is likely to cause confusion among consumers.

118. As a result, Plaintiff has suffered and faces additional imminent and irreparable harm to their reputation and goodwill, and lost revenues, due to Defendants' infringement of their trade dress.

119. Plaintiff is entitled to injunctive relief in the form of an order from the Court prohibiting Defendants from the use of any portion of Enevive trade dress in their course of business and an award of damages in an amount to be proven at trial.

## <u>NINTH CAUSE OF ACTION</u>
(Conversion)

120. Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

121. Since at least 2017, Enevive has utilized firm specific software to conduct daily business operations, including lead generation.

122. Enevive hired Mr. Scheeler and Mr. Watson to improve business operations and at the same time gave them access to all firm specific software.

123. Mr. Scheeler was terminated from Enevive on May 29, 2025, for conduct that worked to exclude the Enevive members from important business decisions, and Mr. Watson followed Mr. Scheeler in departing Enevive.

124. After May 29, 2025, Enevive employees were unable to use or access the firm software that allowed for lead generation.

125.    Upon information and belief, this deprivation of Enevive employees of the ability to access the lead generation software was the result of an unauthorized act by Messrs. Scheeler and Watson.

126.    Additionally, Defendants, upon information and belief, have used Enevive data, including client lists, to generate sales of BlueLogic products.

127.    Any action taken by Messrs. Scheeler and Watson to deprive Enevive employees access to lead generation software or by Defendants to use Enevive data to generate sales for BlueLogic, demonstrates intent to exercise control over the lead generation software and other Enevive property inconsistent with Enevive's rights.

128.    Enevive has been damaged in an amount no less than the value of the software capabilities and leads from which it has been deprived of plus reasonable interest.

129.    As a direct and proximate result of Messrs. Scheeler and Watson's conversion, Enevive has incurred damages in an amount to be determined at trial plus all applicable interest.

**TENTH CAUSE OF ACTION**
(Intentional Interference with Economic Relations)

130.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

131.    While employed with Enevive, Mr. Scheeler and Mr. Watson had direct access to Enevive's lead generation software.

132.    Defendants knew that Enevive relies on their lead generation software to obtain client leads that often turn into actual clients.

133.    Defendants knew that Enevive needed to maintain a flow of new clients to generate revenue and sustain the business.

134.    Mr. Scheeler and Mr. Watson were involuntarily terminated from Enevive on May 29, 2025, for employee misconduct.

135.    In June of 2025, following the termination of Mr. Scheeler and Mr. Watson, all leads being generated by Enevive's lead generation software suddenly halted.

136.    Upon information and belief, Mr. Scheeler and Mr. Watson used the access they had to Enevive's lead generation software to manipulate the software before his access to it was terminated.

137.    Upon information and belief, the halting of the lead generation software was a direct result of technical manipulation by Mr. Scheeler and Mr. Watson.

138.    Enevive was directly harmed as a result of the halting of the lead generation software as this caused a stoppage in the influx of new clients for Enevive, resulting in lost revenue.

139.    Additionally, Defendants became knowledgeable about the primary consumer market of Enevive while they were employed with Enevive.

140.    Defendants had access to and became familiar with Trade Secrets while employed with Enevive that Defendants knew offered a significant advantage that Enevive relied on in the business it conducted.

141.    While they were still employed with Enevive, Defendants started BlueLogic with the intent to create a business that would compete with Enevive for the same business.

142.    Defendants applied the Trade Secrets they had taken from Enevive to BlueLogic with the knowledge that this would decrease the advantage that Enevive had offer that same

advantage to BlueLogic, allowing them to steal business that otherwise would have been directed towards Enevive.

143.   Enevive was directly harmed as a result of the actions taken by Defendants that resulted in business that Defendants took away from Enevive using stolen Trade Secrets.

144.   Enevive has been damaged in an amount no less than the value of all lost revenue due to the Defendants interference, plus reasonable interest.

145.   As a direct and proximate result of Defendants intentional interference with economic relations, Enevive has incurred damages in an amount to be determined at trial plus all applicable interest.

## ELEVENTH CAUSE OF ACTION
(Civil Conspiracy)

146.   Plaintiff hereby realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

147.   Messrs. Scheeler, Watson, Adams, and Bayless were former employees at Enevive with roles that included managerial roles.

148.   As evidenced by their words and conduct before and after employment at Enevive, Messrs. Scheeler, Watson, Adams, and Bayless had the mutually agreed upon object to use Enevive Trade Secrets to form a direct competitor to Enevive.

149.   Messrs. Scheeler, Watson, Adams, and Bayless used Enevive Trade Secrets to establish BlueLogic to accomplish the object of forming a direct competitor to Enevive.

150.   In establishing and maintaining BlueLogic, Messrs. Scheeler, Watson, Adams, and Bayless used unlawful means, including without limitation: Unfair Competition,

23

Misappropriation of Trade Secrets, Intentional Interference with Economic Relations, Breach of Contract, Conversion, Unjust Enrichment, Trade Dress Infringement, etc.

151.    As a result of the Defendants stated unlawful means, Enevive has suffered actual and reputational damages, including lost revenues, profits, and goodwill, in an amount to be determined at trial plus all applicable interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgement against Defendants as follows:

1. As to the First Cause of Action, an injunction against Defendants prohibiting their unfair competitive conduct; and

   a. A judgment in favor of Enevive for general and compensatory damages resulting from Defendants' unfair competition.

2. As to the Second Cause of Action, a judgment in favor of Enevive for general and compensatory damages resulting from Defendants' Statutory Unfair Competition pursuant to Utah Code § 13-5a-103.

3. As to the Third Cause of Action, an injunction against Defendants prohibiting their misappropriation and requiring their affirmative action to protect the Trade Secrets; and

   a. A judgment in favor of Enevive for general and exemplary damages resulting from Defendants' willful and malicious Misappropriation of Trade Secrets pursuant to 18 U.S.C. § 1836.

4. As to the Fourth Cause of Action, an injunction against Defendants prohibiting their misappropriation and requiring their affirmative action to protect the Trade Secrets; and

   a. A judgment in favor of Enevive for general and exemplary damages resulting from Defendants' willful and malicious Misappropriation of Trade Secrets pursuant to Utah Code § 13-24-1 et seq.

5. As to the Fifth Cause of Action, a judgment in favor of Enevive for general and compensatory damages resulting from Defendants' breach of contract.

6. As to the Sixth Cause of Action, a judgment in favor of Enevive for general and compensatory damages resulting from Defendants' breach of the implied covenant of good faith and fair dealing.

7. As to the Seventh Cause of Action, a judgment in favor of Enevive for the value of the benefit conferred on Defendants.

8. As to the Eighth Cause of Action, an injunction against Defendants prohibiting their continued Trade Dress Infringement; and

   a. A judgment in favor of Enevive for general and compensatory damages resulting from Defendants' Trade Dress Infringement pursuant to 15 U.S.C. § 1125(a).

9. As to the Ninth Cause of Action, a judgment in favor of Enevive for the value of the software capabilities it has been deprived of as a result of Defendants' Conversion.

10. As to the Tenth Cause of Action, a judgment in favor of all revenue lost by Enevive as a result of Defendants' intentional interference with economic relations.

11. As to the Eleventh Cause of Action, a judgment in favor of Enevive for general and compensatory damages resulting from Defendants' civil conspiracy.

12. Any further relief as the Court deems just and equitable under the circumstances including attorney fees where applicable, punitive damages, and pre- and post-judgment interest.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action to all issues so triable.

DATED: September 11, 2025.

**SUMSION BUSINESS LAW**

*/s/ Steven R. Sumsion*

Steven R. Sumsion
*Attorney for Plaintiff*

26

## VERIFICATION

I, Trent Spafford, managing member of Enevive, LLC, hereby declare that I have read the foregoing verified complaint and declare further under penalty of perjury that all allegations and statements contained therein are true and accurate to the best of my knowledge, information, and belief, and as to those matters alleged upon information and belief, I believe them to be true.

DATED: September 11, 2025.

*/s/ Trent Spafford*
Trent Spafford
(*e-signed with permission obtained via email)*