# Employment Contract

This Employment Contract ("Contract") is made effective as of December 28, 2024, by and between ENEVIVE - Info ("Employer") of 527 W State Street, Pleasant Grove, Utah, 84062 and Jared Bayless ("Employee") of 1779 W Ridgeline Rd., Southrim, Utah, 84071.

   A. The Employer is engaged in the business of marketing though our U.R.P. (Unique Research Process), educating our clients about the dire state of our tap water supplies, consulting/selling water treatment systems and solutions, installing and servicing water treatment systems, offering the best soap products on the market, and sharing with people how to return back to some basic health concepts that start with clean water.. The Employee will primarily perform the job duties at the following location: 527 W State Street, Pleasant Grove, Utah 84062.

   B. The Employer desires to have the services of the Employee.

   C. The Employee is an at-will employee of the Employer. Either party is able to terminate the Contract at any time.

Therefore, the parties agree as follows:

**1. Employment.** The Employer shall employ the Employee as a(n) Client Services Director. The Employee accepts and agrees to such employment, and agrees to be subject to the general supervision, advice, and direction of the Employer and the Employers supervisory personnel. The Employee shall provide to the Employer the following services:

Spearhead the Enevive's entire client services department including but not limited to: installing our various water treatment protocols, building our installation staff to be able to handle the installs and service of all our clients, develop strategic ways to maximize each staff members time worked within the Client Services Division, learn the different water systems, solve the technical issues facing the growth plan for ENEVIVE, provide technical service for our Client Services Department and our clients, positively contribute to the growth of ENEVIVE, help design and produce our custom RO systems, help train, motivate and support our current and future installation reps and service reps in our Client Services Department, assist in the installations of our water protocols, assist Trent Spafford and others in the growth and expansion of ENEVIVE (National and local Brand Partners) be a leader and mentor to other staff members on our team.

The Employee shall also perform (i) such other duties as are customarily performed by an employee in a similar position, and (ii) such other and unrelated services and duties as may be assigned to the Employee from time to time by the Employer.

**2. Best Efforts of Employee.** The Employee agrees to perform faithfully, industriously, and to the best of the Employee's ability, experience, and talents, all of the duties that may be required by the express and implicit terms of this Contract, to the reasonable satisfaction of the Employer. Such duties shall be provided at such place(s) as the needs, business, or opportunities of the Employer may require from time to time.

**3. Compensation of Employee.** As compensation for the services provided by the Employee under this Contract, the Employer will pay the Employee an annual salary of $120,000.00 payable on Monday of every other week and subject to applicable federal, state, and local withholding. In addition, Employee may earn various bonuses and commissions for referring clients to Enevive, selling used equiptment, reaching goals within the division.

**ANNUAL BONUS**: A 2% bonus will be earned when the sales generated through research division exceeds $4,000,000 in annual revenue (ie. $7,500,000 in total gross sales pays out as shown in the example $7,500,000 (-) $4,000,000 = $3,500,000 X 2% = $70,000 annual bonus. this bonues will be paid within 2 months of the completed year, with a celing of $300,000 paid on this bonus.

Upon termination of this Contract, payments under this paragraph shall cease; provided, however, that the Employee shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which the Employee has not yet been paid, and for any commission earned in accordance with the Employer's customary procedures, if applicable. Accrued vacation will be paid in accordance with state law and the Employer's customary procedures. This section of the Contract is included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment.

**4. Expense Reimbursement.** The Employer will reimburse the Employee for "out-of-pocket" expenses incurred by the Employee in accordance with the Employer's policies in effect from time to time.

**5. Recommendations for Improving Operations.** The Employee shall provide the Employer with all information, suggestions, and recommendations regarding the Employer's business, of which the Employee has knowledge, that will be of benefit to the Employer.

**6. Confidentiality.** The Employee recognizes that the Employer has and will have information regarding the following:
- Inventions
- Products
- Product design
- Processes
- Technical matters
- Trade secrets
- Copyrights
- Customer lists
- Prices
- Costs
- Discounts
- Business affairs
- Future plans
- The D.U.R.R. Method, The U.R.P.

and other vital information items (collectively, "Information") which are valuable, special, and unique assets of the Employer. The Employee agrees that the Employee will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any items of Information to any third party without the prior written consent of the Employer. The Employee will protect the Information and treat it as strictly confidential. A violation by the Employee of this paragraph shall be a material violation of this Contract and will justify legal and/or equitable relief.

This Contract is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**7. Unauthorized Disclosure of Information.** If it appears that the Employee has disclosed (or has threatened to disclose) Information in violation of this Contract, the Employer shall be entitled to an injunction to restrain the Employee from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has, or may have been disclosed or may be disclosed. The Employer shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

**8. Confidentiality After Termination of Employment.** The confidentiality provisions of this Contract shall remain in full force and effect for a period of 36 months after the voluntary or involuntary termination of the Employee's employment. During such period, neither party shall make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed by or connected with the Employer.

**9. Non-Compete Agreement.** The Employee recognizes that the various items of Information are special and unique assets of the company and need to be protected from improper disclosure. In consideration of the disclosure of the Information to the Employee, the Employee agrees and covenants that during his or her employment by the Employer and for a period of two years following the termination of the Employee's employment, whether such termination is voluntary or involuntary, the Employee will not directly or indirectly engage in any business competitive with the Employee.

This covenant shall apply to the geographical area that includes the area within a 300-mile radius of where Enevive has an office or Brand Partner. Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of the Employer for the benefit of a third party that is engaged in such business. The Employee agrees that this non-compete provision will not adversely affect the Employee's livelihood.

**10. Employee's Inability to Enter Into Contracts on Behalf of the Employer.** The Employee shall not have the right to make any contracts or commitments for or on behalf of the Employer without first obtaining the express written consent of the Employer.

**11. Benefits.** The Employee shall be entitled to employment benefits after 90 days as provided by the Employer's policies in effect during the term of employment. These benefits include:
   - Personal Time Off (Vacation/Personal leave): One week paid time off accrues at a .02 for every hour worked. This accumulates to 40 hours per year (one week) and can be carried over for one year then if its not used then the accrued paid time off is flushed.
   - Holidays: the following holidays are paid time off should they land on a regular work day; New Years Eve, New Years Day, Thanksgiving Day, Black Friday, Christmas Eve, Christmas Day.
   - a monthly $200 health care bonus.

**12. Term/Termination.** The Employee's employment under this Contract shall be for an unspecified term on an "at will" basis. This Contract may be terminated by the Employer upon 1 day written notice, and by the Employee upon 2 weeks written notice. If the Employee is in violation of this Contract, the Employer may terminate employment without notice and with compensation to the Employee only to the date of such termination. The compensation paid under this Contract shall be the Employee's exclusive remedy.

**13. Termination for Employee Disability.** The Employer shall have the option to terminate this Contract, if the Employee becomes permanently disabled and is no longer able to perform the essential functions of the position with reasonable accommodation. The Employer shall exercise this option by giving 30 days written notice to the Employee.

**14. Compliance with Employer's Rules.** The Employee agrees to comply with all of the rules and regulations of the Employer.

**15. Return of Employer Property.** Upon termination of this Contract, the Employee shall deliver to the Employer all property which is the Employer's property or related to the Employee's company (including keys, records, notes, data, memoranda, models, and equipment) that is in the Employee's possession or under

the Employee's control. Such obligation shall be governed by any separate confidentiality or proprietary rights agreement signed by the Employee.

**16. Notices.** All notices required or permitted under this Contract shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

The Employer:

ENEVIVE
TRENT SPAFFORD
FOUNDER/CEO
527 W State Street
Pleasant Grove, Utah 84062

The Employee:

Jared Bayless
1779 W Ridgeline Rd.
Southrim, Utah 84071

Such addresses may be changed from time to time by either party by providing written notice in the manner set forth above.

**17. Entire Agreement.** This Contract contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Contract supersedes any prior written or oral agreements between the parties.

**18. Amendment.** This Contract may be modified or amended, if the amendment is made in writing and is signed by both parties.

**19. Severability.** If any provisions of this Contract shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**20. Waiver of Contractual Rights.** The failure of either party to enforce any provision of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

**21. Applicable Law.** This Contract shall be governed by the laws of Utah.

**22. Signatories.** This Contract shall be signed by Trent Spafford, CEO on behalf of ENEVIVE - Info and by Jared Bayless in an individual capacity. This Contract is effective as of the date first above written.

The Employer:
ENEVIVE - Info

By: _____    Date: 12/28/2024 _____

Trent Spafford
CEO


The Employee:


By: _____    Date: 12/30/2024 _____

Jared Bayless



# NONDISCLOSURE AGREEMENT

This **NON-DISCLOSURE AGREEMENT** (the "Agreement") is made and entered into as of the date signed below by and between Trent Spafford, personally, of Enevive LLC ("Enevive" or the "Disclosing Party"), and Jared Bayless, personally, residing at 1779 W Ridgeline Rd. Southrim, Utah 84071(collectively referred to as the "Recipient").

## RECITALS

WHEREAS, the Parties wish to explore a business relationship and in the course of this relationship may disclose certain confidential and proprietary information;
WHEREAS, Enevive possesses valuable business plans, methodologies, and processes that it seeks to protect;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein, the Parties agree as follows:

## 1. DEFINITION OF CONFIDENTIAL INFORMATION

For purposes of this Agreement, "Confidential Information" shall include, but is not limited to, the following proprietary information of Enevive:
- Strict confidentiality on all aspects of Enevive's financials including but not limited to:
  - Balance Sheets
  - Accounting Practices and totals
  - Bookkeeping
  - P&L's
  - Cash Flow Statements
- Enevive's Unique Research Process® (U.R.P.)
- The D.U.R.R. Method®
- Growth strategies and scripts for marketing
- Conducting online meetings and sales calls
- Unique closing tactics developed by Trent Spafford and/or Enevive
- Enevive's App "EDNA"
- Enevive's playbook
- Water dealerships' involvement with Charity Water
- Enevive's Brand Partner Program

1

- Enevive's pure water fill station
- All inventions, water treatment systems and/or protocols
- All marketing brochures
- I-Decide presentation videos
- Video assets, podcasts, and influencer programs
- Sales training modules for dealership growth
- Any other information unique to Enevive's processes
- Software customization and utilization used by Enevive
- Strategic partnerships, vendors, and or manufactures
- Intellectual property and practices

## 2. OBLIGATIONS OF THE RECIPIENT

2.1 **Confidentiality.** The Recipient agrees to hold all Confidential Information in strict confidence and shall not disclose it to any third party without the prior written consent of Enevive.

2.2 **Use of Confidential Information**. The Recipient agrees to use the Confidential Information solely for the purpose of evaluating and pursuing the business relationship with Enevive and for no other purpose.

2.3 **Protection of Information**. The Recipient shall take all reasonable precautions to protect the confidentiality of the Confidential Information, using at least the same degree of care that it uses to protect its own confidential information.

## 3. TERM

This Agreement shall commence on the date signed below and shall continue for a period of **36 months.**

## 4. EXCLUSIONS FROM CONFIDENTIAL INFORMATION

Confidential Information does not include information that:
a) Becomes generally known to the public through no wrongful act of the Recipient;
b) Is rightfully received from a third party without restrictions on disclosure;
c) Is approved for release by written authorization of Enevive;
d) Is disclosed pursuant to the requirement of a government agency or court of law.

2

## 5. RETURN OF MATERIALS

Upon termination of this Agreement or at the request of Enevive, the Recipient shall promptly return or destroy all materials embodying Confidential Information, including all copies thereof.

## 6. REMEDIES

The Recipient acknowledges that any breach of this Agreement may cause irreparable harm to Enevive, for which monetary damages may not be an adequate remedy. Therefore, Enevive shall be entitled to seek injunctive relief in addition to any other legal remedies available.

### 6.1 LEGAL ACTION

In the event of a breach of this Agreement by the Recipient or their team, Enevive shall be entitled to pursue legal action, including but not limited to seeking damages of at least **$250,000,** plus any additional losses or expenses incurred, including court costs and reasonable attorney's fees.

## 7. NO LICENSE

Nothing in this Agreement shall be construed as granting any rights to the Recipient under any patent, copyright, trademark, or other intellectual property right of Enevive.

## 8. GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Utah.

## 9. ENTIRE AGREEMENT

This Agreement constitutes the entire understanding between the Parties regarding the subject matter hereof and supersedes all prior agreements and understandings, whether written or oral.

**WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth below.

3

ENEVIVE LLC

By: _____

Trent Spafford
Founder/CEO
ENEVIVE

Date: _____ 12/28/2024 _____

Jared Bayless

By: _____

Date: _____
12/30/2024

4